**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE BONDHOLDER COMMITTEE ON BEHALF OF THE OWNERS OF QUAD CITIES REGIONAL ECONOMIC DEVELOPMENT AUTHORITY FIRST MORTGAGE REVENUE BONDS SERIES 2013A, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAUK VALLEY STUDENT HOUSING, LLC, et al., <br><br> Defendants. | Civil Action No. 17-7337 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant BOKF, NA d/b/a BOK Financial's ("BOKF") Motion to Dismiss (ECF No. 83), and Defendants BMOC, Inc. and William J. Levy's (collectively, "BMOC") Motion to Dismiss (ECF No. 85). BOKF and BMOC (collectively, "Defendants") move to dismiss the Third Amended Complaint (ECF No. 80) of Plaintiffs The Bondholder Committee, on behalf of the Owners of Quad Cities Regional Economic Development Authority First Mortgage Revenue Bonds Series 2013A (the "Committee"), and Elliot S. Vesell, Paul J. Rose, Norman Bryant, Gerald Gordon, Hermine Gordon, J. Kevin Davis, Annetta Hoffman, Joe L. Collins, William Embry, Helen Embry, Selene Von Bartheld, George R. Kern, Sharon Coppola, Peter Coppola, Robert Baxer, Susan Rodio, Victor Polakoff, Robert M. Young, Sharon Mason-Potenza, Rita Kaye, Robert E. Cowley, Liane C. Vesell, Karin B. Liccardo, Wallace

Hollander, Steven Embry, Edmund Czachor, Margaret Susan Collins Davis, Amber Dawn Huyett, Thomas Gardner, Sophia Czacor, James Barker, Shirley Keahey, Burn Rose LLC A/C 1, and Scott T. Dieter (collectively, the "Individual Bondholders") (together with the Committee, "Plaintiffs"). Plaintiffs opposed Defendants' Motions (ECF Nos. 88, 89), and Defendants replied (ECF Nos. 90, 91). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motions to Dismiss are granted.

I.     BACKGROUND[1]

     A.     Factual Background

     The parties are familiar with the factual and procedural history of this matter, and therefore the Court only recites those facts necessary to resolve the instant motions. Plaintiffs bring this action as investors in bonds issued to fund a student housing project adjacent to the Sauk Valley Community College in Dixon, Illinois (the "Project"). (Third Am. Compl. ¶¶ 38–39, 64, 144, 150–51, ECF No. 80.) According to Plaintiffs, in 2014, Cantone Research, Inc. ("CRI"), a non-party to this suit, "underwrote the offering and sale of the [b]onds" to Plaintiffs. (Id. ¶ 37.) CRI is a broker/dealer with its principal place of business in New Jersey. (Id.)

     BMOC is a Wisconsin-based company that both manages and provides residential life services to student housing facilities. (Id. ¶ 47; see generally Levy Decl., ECF No. 85-15.) In 2013, BMOC contracted with the limited liability company that owns and operates the student housing project at issue in this case. (Third Am. Compl. ¶ 110.) BMOC agreed to provide its services to the facilities in exchange for a fixed monthly fee and a percentage of the Project's

---

[1] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Third Amended Complaint. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

revenue. (Property Management Agreement 9–10, Ex. 1 to Declaration of Gregory J. Hindy ("Hindy Decl."), ECF No. 85-3.)

Plaintiffs allege that BMOC contributed to three misleading documents that were ultimately incorporated into the materials used to market the bonds sold to Plaintiffs. First, in preparation for the bond issuance, BMOC provided misleading information on the student housing project's "management, occupancy, costs and expenses of operation and future rents" to a "feasibility consultant" (the "Feasibility Consultant"). (Third Am. Compl. ¶ 91.) The Feasibility Consultant, who is not a party to this litigation, is alleged to have then prepared "a feasibility study" using, in part, the information provided by BMOC. (*Id.* ¶¶ 91–92.) According to Plaintiffs, the study was forwarded by the Feasibility Consultant to Defendant Sugar Valley Capital Partners, LLC ("SVCP"). (*Id.* ¶¶ 45, 92.) Second, Plaintiffs allege that SVCP "commissioned Appraisal Research Counselors ("ARC") to prepare an appraisal for the Project." (*Id.* ¶ 86.) "Upon information and belief," Plaintiffs allege that BMOC provided misleading occupancy information to ARC, who then incorporated that information into its appraisal. (*Id.* ¶ 347(a).) ARC is alleged to have then "provided the appraisal, dated June 4, 2013, to [an SVCP official] to be used in connection with the offering." (*Id.* ¶ 88.) Finally, Plaintiffs allege, "upon information and belief," BMOC provided misleading information for the student housing project's "financial forecast." (*Id.* ¶ 347(b).)

The Feasibility Consultant's study, ARC's appraisal, and the financial forecast were all allegedly incorporated into the preliminary official statement for the bond offering ("PS") as exhibits. (*Id.* ¶ 96.) According to Plaintiffs, the PS was "produced and circulated," and ultimately "finalized" by Brian McCabe, a person representing Defendants SVCP and Sauk Valley Student

Housing, LLC.[2]  (*Id.* ¶¶ 82, 84, 106–07.)  Plaintiffs allege that, once finalized, the PS was "delivered by CRI to its clients and CRI began marketing the Bonds to its clients."  (*Id.* ¶ 108.) Then, "[o]n or about November 1, 2013, the final official statement (the "OS") was completed and delivered to all parties involved in the offering, and CRI delivered the OS to its prospective-investor clients," including the Plaintiffs.  (*Id.* ¶ 111.)  Plaintiffs plead that McCabe was "the primary drafter of the [PS] and OS" that allegedly contained materially misleading information. (*Id.* ¶¶ 120–21.)

The Complaint avers that "BOKF is a national banking association . . . with its principal place of business in Tulsa, Oklahoma."  (*Id.* ¶ 56.  With respect to BOKF, Plaintiffs allege that, beginning in 2014, the legal entities controlling the student housing project began making late interest payments on the bonds and eventually defaulted on their obligations to bondholders.  (*Id.* ¶¶ 162, 166, 169, 198–202.)  According to Plaintiffs, BOKF "served as indenture Trustee for the [b]onds and as the dissemination agent for the [o]ffering."  (*Id.* ¶ 58.)  Plaintiffs allege that BOKF breached its contract with and fiduciary duties to bondholders by failing to take necessary actions to secure payment on the bonds and failing to obtain required financial disclosures from the legal entities controlling the student housing project.  (*Id.* ¶¶ 272, 282, 291.)

### B.   Procedural Background

The Committee filed its initial Complaint on September 21, 2017. (ECF No. 1.) Defendants subsequently moved to dismiss (ECF Nos. 19, 20) and on July 11, 2018, the Court dismissed the Complaint finding that the Committee failed to establish standing to bring suit, (July 11, 2018 Memo. Op. 3–5, ECF No. 41).  The Court granted the Committee leave to file an amended

---

[2] These Defendants are not subject to the two motions to dismiss now pending before the Court.

complaint (*id.* at 5–6), and the Committee filed an Amended Complaint on August 13, 2018. (ECF No. 44.)

Defendants moved to dismiss the Amended Complaint (ECF Nos. 47, 48) and on April 24, 2019, the Court granted dismissal finding that, once again, the Committee failed to establish standing, (Apr. 24, 2019 Memo. Op. 3–6, ECF No. 56). The Court noted that Plaintiff "failed to indicate its individual members" and "failed to support its assertion that [their] individual participation in the instant matter is not required." (*Id.* at 5.) The Court granted the Committee leave to file a second amended complaint and "one final opportunity to establish standing to pursue the action." (*Id.* at 6.)

On May 23, 2019, the Committee filed a Second Amended Complaint (ECF No. 58), which Defendants subsequently sought to dismiss (ECF Nos. 61, 68). On January 29, 2020, the Court granted Defendants' motions to dismiss. (*See generally* Jan. 29, 2020 Memo. Op., ECF No. 78.) Although the Second Amended Complaint specified which bondholders were members of the Committee, (*id.* at 2), the Court found that "the monetary relief sought by each member here would require every member's participation in the litigation." (*Id.* at 5.) The Committee therefore "failed to demonstrate it has associational standing" to bring this suit. (*Id.* at 5–6.) The Court, however, granted the Committee's request to file a third amended complaint. (ECF No. 79.)

On February 28, 2020, Plaintiffs filed the Third Amended Complaint, naming the Individual Bondholders as plaintiffs. (*See generally* Third. Am. Compl.) The Third Amended Complaint alleges twenty-five counts against Defendants. Plaintiffs allege: Counts One and Two, for breach of fiduciary duty, (*id.* ¶¶ 213–37); Counts Three and Four, for fraud, (*id.* ¶¶ 238–49); Count Five, for breach of contract, (*id.* ¶¶ 250–62); Count Six, for breach of contract by the trustee BOKF, (*id.* ¶¶ 263–77); Count Seven, for breach of fiduciary duty by the trustee BOKF, (*id.*

¶¶ 278–89); Count Eight, for violations of the Uniform Trust Code, N.J. Stat. Ann. § 3B:31, *et seq.*, (*id.* ¶¶ 290–92); Count Nine and Ten, for violations of the New Jersey Uniform Securities Act, N.J. Stat. Ann. § 49:3-52, (*id.* ¶¶ 293–302); Count Eleven and Twelve, for breach of the covenant of good faith and fair dealing, (*id.* ¶¶ 303–15); Counts Thirteen and Fourteen, for a promise causing detrimental reliance, (*id.* 316–29); Counts Fifteen and Sixteen, for unjust enrichment, (*id.* ¶¶ 330–37); Counts Seventeen and Eighteen, for violations of Rule 10b–5 of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78a, *et seq.*, (*id.* ¶¶ 338–51); Count Nineteen, for violations of Rule 20(b) of the Exchange Act, (*id.* ¶¶ 352–55); Counts Twenty and Twenty-One, seeking to pierce the corporate veil, (*id.* ¶¶ 356–68); Counts Twenty-Two and Twenty-Three, for civil conspiracy to defraud Plaintiffs, (*id.* ¶¶ 369–88); and Counts Twenty-Four and Twenty-Five, for violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8, *et seq.*, (*id.* ¶¶ 389–400).

## II.      LEGAL STANDARD

### A.      Failure to State a Claim and Federal Rule of Civil Procedure 12(b)(6)

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere

restatements of the elements of [a] claim [ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted). "Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Where a plaintiff pleads fraud, however, the plaintiff "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). Additionally, the Private Securities Litigation Reform Act ("PSLRA")

requires that a securities fraud complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006)).

### B.   Personal Jurisdiction and Federal Rule of Civil Procedure 12(b)(2)

For purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . not mere allegations." *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotation marks and citation omitted); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

## III.   DISCUSSION

### A.   BMOC's Motion

#### 1.   Section 10(b) of the Exchange Act and SEC Rule 10b–5 Claims against Defendant BMOC

##### i.   Plaintiffs' Federal Securities Claims Fail Because They Do Not Allege BMOC Was the "Maker" of Misleading Statements

To survive a motion to dismiss, a plaintiff bringing an action under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5 must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 31–38 (2011) (quoting *Stoneridge Invest. Partners, LLC v. Sci-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). "Rule 10b–5 provides three ways that a person may be liable under Section 10(b) of the Exchange Act." *In re Cognizant Tech. Solutions Corp. Secs. Litig.*, No. 16-6509, 2020 WL 3026564, at \*14. (D.N.J. June 5, 2020). Under Rule 10b–5, it is unlawful:

> '(a) [t]o employ any device, scheme, or artifice to defraud,
>
> (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,'
>
> that is carried out 'in connection with the purchase or sale of any security.'

*Id.* (quoting 17 C.F.R. § 240.10b–5). "Section 10(b) of the [Exchange Act] and the Securities and Exchange Commission's Rule 10b–5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security." *Id.* at \*10 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). "Traditionally, under subsection (b), an individual must 'make' the allegedly misleading statements or omissions of material fact, while subsections (a) and (c) cover what is referred to as 'scheme liability' for allegedly deceptive conduct." *Id.* (citations omitted).

BMOC argues that Section 10(b) liability for the allegedly misleading statements and omissions raised in the Third Amended Complaint are controlled by subsection (b) of Rule 10b–5. (BMOC Moving Br. 8–9, ECF No. 85-1 (arguing that the Third Amended Complaint "fails to adequately allege that defendants *made* a material misstatement or omission" (emphasis added)).)

In their response, Plaintiffs do not dispute that subsection (b) controls Section 10(b) liability for the allegedly misleading statements and omissions raised in the Third Amended Complaint. (*See* Pls.' BMOC Opp'n Br. 11–12, ECF No. 88.) Nor do Plaintiffs invoke subsections (a) or (c). (*See generally id.*) Further still, Plaintiffs do not dispute BMOC's contention that the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), controls the question of whether BMOC was the "maker" of the allegedly misleading statements and omissions. In fact, Plaintiffs' opposition fails to address or attempt to distinguish *Janus* from the case now before the Court. (*See generally* Pls.' BMOC Opp'n Br.)

*Janus* is instructive and controlling law here. In *Janus*, the Supreme Court held that "for purposes of Rule 10b–5, the maker of a statement is the person or entity with *ultimate authority* over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc.*, 564 U.S. at 142. (emphasis added). Ordinarily,

> attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by— and only by—the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said.

*Id.* at 142–43.

Plaintiffs allege that BMOC provided misleading and deceptive statements to the non-party Feasibility Consultant regarding the student housing project's "management, occupancy, costs and expenses of operation and future rents." (Third Am. Compl. ¶ 91.) The Feasibility Consultant is alleged to have then used this misleading information to complete its "feasibility study." (*Id.* ¶ 92.) The consultant then allegedly sent the study to a member of Defendant SVCP. (*Id.*) According to Plaintiffs, this study was then attached and incorporated into the PS and OS by a representative for

SVCP and Sauk Valley Student Housing, LLC. (*Id*. ¶¶ 42, 44, 49, 82–84, 96, 106–08, 152, 153(o)–(s).)  Similarly, Plaintiffs allege that BMOC submitted misleading occupancy information to an appraiser, and that the appraiser eventually "provided the appraisal" to SVCP "to be used in connection with the offering." (*Id*. ¶ 88.)  The appraisal was also then attached as an exhibit to the PS and eventually circulated by CRI to its clients.  (*Id*. ¶¶ 96, 108.)  Additionally, Plaintiffs maintain that a financial forecast included inaccurate information that originated with BMOC and that was incorporated into the PS and OS.  (*Id*. ¶ 347(b).)  Plaintiffs allegedly relied on the PS and the OS when purchasing the bonds.  (*Id*. ¶¶ 152–153.)  Plaintiffs admit that a representative for Defendants SVCP and Sauk Valley Student Housing, LLC was "the primary drafter of the [PS] and OS."  (*Id*. ¶¶ 120–121.)

The Complaint does not allege that BMOC had ultimate authority over the PS and OS on which Plaintiffs allegedly relied.  Although those documents allegedly incorporated and attached the appraisal, feasibility study, and financial forecast to which BMOC contributed, Plaintiffs admit that a representative for non-BMOC defendants was "the primary drafter of the [PS] and OS" before those documents were "finalized" by the representative, "circulated" to CRI, and ultimately "delivered by CRI to its clients."  (Third Am. Compl. ¶¶ 108, 111, 120–21.)  Accordingly, Plaintiffs have failed to state a Section 10(b) or Rule 10(b)–5 claim against BMOC for misstatements and omissions because they do not plead that BMOC was the "maker" of these statements or the exhibits attached to them.  *See Cognizant*, 2020 WL 3026564, at *16 (finding that defendant was not liable for securities violations where defendant lacked ultimate authority over alleged misstatements attached to a company's SEC filings).

  ii.  Plaintiffs' Securities Claims Fail Because They Do Not Allege That
      BMOC Had A Duty to Disclose Material Information to Plaintiffs

To the extent Plaintiffs allege Section 10(b) and Rule 10(b)–5 violations because BMOC

failed to disclose material information to investors, these claims also fail.  The Third Amended

Complaint alleges that BMOC supplied information to the primary drafters of the PS and OS.

According to Plaintiffs, BMOC did not disclose material information relating to the project's

occupancy, debt service coverage, and certain agreements between BMOC and the college that

allegedly undermined the housing project's financial performance.  (*See* Third Am. Compl. ¶¶ 124,

129, 153(m)–(n).)  But Plaintiffs have not adequately pleaded that BMOC had a duty to disclose

this information to Plaintiffs.

  "To impose liability for non-disclosure, a defendant must be under a duty to disclose the

omitted information."  *Winer Family Trust v. Queen*, 503 F.3d 319, 329 (3d Cir. 2007) (citing

*Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not

misleading under Rule 10(b)–5."))  "As a general matter, an affirmative duty arises only when

there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading

prior disclosure."  *Id.*  Plaintiffs' opposition to BMOC's Motion asserts "[BMOC] had every duty

to disclose pursuant to the [Exchange Act]."  (Pls.' BMOC Opp'n Br. 12.)  Yet they cite no

authority supporting this contention.  Nor do they provide sufficient supporting factual allegations.

The Third Amended Complaint only alleges that BMOC supplied information to another entity,

who then had ultimate authority over the representations distributed to Plaintiffs by yet another

party.  Plaintiffs do not allege that BMOC engaged in insider trading.  Nor do they cite a statute

that required BMOC to disclose information to Plaintiffs in order to avoid violating Section 10(b)

or Rule 10(b)–5.  Furthermore, Plaintiffs do not claim that BMOC was an agent or a fiduciary in

whom they had placed their trust and confidence.  *Cf. Chiarella v. United States*, 445 U.S. 222,

232–35 (1980) (holding that that under Section 10(b) and Rule 10(b)–5 "there can be no fraud absent a duty to speak"). Under these facts, this Court cannot recognize a duty to disclose by BMOC without first formulating a broad duty to disclose between complete strangers. But such a holding would "depart[] radically from the established doctrine that duty arises from a specific relationship between two parties." *Id.* at 233. The creation of such a rule "should not be undertaken absent some explicit evidence of congressional intent." *Id.* Accordingly, the Court finds that BMOC did not violate Section 10(b) or Rule 10(b)–5 by failing to disclose material information to Plaintiffs.

### 2. The Court Declines to Exercise Supplemental Jurisdiction over Remaining Claims against BMOC

Because the Court dismisses Plaintiffs' Section 10(b) and Rule 10(b)–5 claim against BMOC, the Court declines supplemental jurisdiction over Plaintiffs' remaining non-federal law claims against BMOC, including those alleging breach of fiduciary duty, fraud, violation of the New Jersey Uniform Securities Act, breach of covenant of good faith and fair dealing, promise causing detrimental reliance, unjust enrichment, piercing the corporate veil, civil conspiracy, and the NJCFA claims. *See* 28 U.S.C. § 1367(c)(3) (stating a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction"); *see also Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015) ("Because the Court dismisse[s] all claims over which it ha[s] original jurisdiction, it ha[s] the

authority to decline to exercise supplemental jurisdiction over the remaining state-law claims.").[3]
Accordingly, the Court dismisses all claims against BMOC.[4]

### B.   BOKF's Motion

#### 1.   The Court Does Not Have Personal Jurisdiction Over BOKF

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided
under New Jersey State law.  New Jersey's long-arm statute provides for jurisdiction coextensive
with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d
at 96 (internal citations omitted).  "Thus, parties who have constitutionally minimum contacts with
New Jersey are subject to suit there." *Id.* (internal quotation marks omitted).

A federal district court may exercise two types of personal jurisdiction: general jurisdiction
and specific jurisdiction.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir.
2007); *see also Helicopteros Hacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984).
Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where:
(1) the defendant "purposefully directed its activities at the forum"; (2) the litigation "arise[s] out
of or relate[s] to at least one of those activities" and (3) the exercise of jurisdiction "comports with
fair play and substantial justice."  *O'Connor*, 496 F.3d at 317 (internal quotation marks and

---

[3] Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining
claims against BMOC, the Court denies Plaintiffs' request to transfer these claims "to Illinois."
(*See* BMOC Moving Br. 30.)  Where a court declines to exercise supplemental jurisdiction over a
plaintiff's non-federal claims, it lacks subject matter jurisdiction over those claims.  *City of
Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 F. App'x 163, 165 (3d Cir. 2006).
"A court may not transfer a case under Section 1406 unless it has subject matter jurisdiction over
the action." *Sanderson v. Spectrum Labs., Inc.*, 248 F.3d 1159, 1160 n.1 (7th Cir. 2000); *Andrade
v. Chojnacki*, 934 F. Supp. 817, 824 (S.D. Tex. 1996) ("the [c]ourt may not order a transfer under
either section 1404(a) or section 1406(a) unless it has jurisdiction over the subject matter of the
lawsuit."); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 3827 (4th Ed. 2020).
[4] Plaintiffs do not argue that the Court has diversity jurisdiction over the remaining claims
against BMOC.  (Pls.' BMOC Opp'n Br. 23.)

citations omitted).  "The defendant need not be physically located in the state while committing the alleged acts."  *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 528 (D.N.J. 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  "Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum."  *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

The Court, therefore, must first determine whether BOKF purposefully directed its activities at New Jersey.  The parties agree that BOKF's principal place of business is in Tulsa, Oklahoma.  (Third Am. Compl. ¶ 56; *see also* Varzaly Aff. ¶ 1, Ex. E to Declaration of William J. Fleischer ("Fleischer Decl."), ECF No. 83-2.)[5]  Through an affidavit from its Senior Vice President, Brent Varzaly, BOKF avers that its "role as bond trustee for the Illinois-based [b]onds at issue in this matter involved no activity by [BOKF] in New Jersey."  (Varzaly Aff. ¶ 6.)  The Varzaly Affidavit asserts that the bond offering "closed in Illinois.  [BOKF] did not issue, underwrite, market or sell the [b]onds, and [BOKF] carried out its trustee work from its Tulsa, Oklahoma offices."  (*Id.* ¶ 7.)  Plaintiffs allege, however,  that BOKF purposefully directed its activities at New Jersey because the bonds' closing "required multiple contacts between Defendants herein and the underwriter," CRI, "located in Monmouth County, New Jersey, inclusive of written correspondences, video conferences, phone calls and e-mails."  (Third Am. Compl. ¶ 4.)  Plaintiffs further argue that BOKF "forwarded signed closing documents to [CRI], attended the closing via video conference[,] and wired money to New Jersey as part of the closing."

---

[5] All of the exhibits attached to the Fleischer Declaration are included in a single file and, therefore, all appear at ECF No. 83-2. The Varzaly Affidavit consists of pages 154–55, as noted in the ECF header.

(Pls.' BOKF Opp'n Br. 3, ECF No. 89; *see also* Nov. 6, 2013 Invoice, Ex. K to Declaration of Richard W. Wedinger ("Wedinger Decl."),[6] ECF No. 89-12.)

The Court finds that BOKF's interactions with CRI, the New Jersey-based underwriter for the bonds at issue in this case and a non-party to this action, do not demonstrate that BOKF purposefully directed its activities toward New Jersey. "It is well established . . . that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident." *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 32 (1993) (citing *Burger King*, 471 U.S. at 478). Moreover, "informational communications in furtherance of [a] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [a nonresident defendant]." *CBD & Sons, Ltd. v. Setteducati*, No. 18-4276, 2019 WL 396982, at *7 (D.N.J. Jan. 31, 2019) (quoting *Sunbelt*, 5 F.3d at 32) (alterations in the original). In order for specific jurisdiction to be conferred on the basis of the defendant's contacts with forum residents, "the relationship must arise out of contacts that the defendant *himself* creates within the forum state." *Id.* at *6 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). But the Third Amended Complaint does not allege that BOKF itself solicited CRI's involvement in the bond offering at issue in this case. To the contrary, Plaintiffs allege that third-parties solicited CRI's involvement in the bond offering. (Third Am. Compl. ¶¶ 94–95 (alleging that officials at SVCP and an earlier underwriter for the Project's bonds "approached . . . the Vice President Fixed-Income of CRI, to take over as underwriter on the [o]ffering").)

---

[6] Plaintiffs include a copy of the Wedinger Declaration along with both of their opposition briefs. (*See* ECF Nos. 88-1, 89-1.) The exhibits attached to each opposition brief are identical.

There is some precedent, however, for holding that a non-resident defendant has purposefully directed its activities at a forum state by transmitting payments into the state in connection with the disputed agreements. *See, e.g.*, *North Penn. Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687 (3d Cir. 1990); *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157 (D.N.J. 1992). But these cases are distinguishable. In *North Penn*, for example, defendants transmitted monthly payments to the plaintiff-forum resident in the forum state. *North Penn*, 897 F.2d at 689. Moreover, in *North Penn*, non-resident defendants executed these agreements in order to store natural gas in the forum state. *Id.* at 689. Similarly, in *Apollo*, although payments to and from non-residents passed through the forum state, the plaintiff-forum resident was also required to supply products from the forum state. *Apollo*, 805 F. Supp. at 1185.

By contrast, here, there is no suggestion that BOKF directed payments to CRI in order to secure a benefit from or within New Jersey. Rather, the parties' submissions indicate that BOKF entered into agreements with Sauk Valley Student Housing, LLC, an Illinois limited liability company, and Quad Cities Regional Economic Development Authority, a political subdivision created by the Illinois General Assembly. BOKF entered these agreements in order to facilitate the issuance of bonds supporting a community college student housing project in Dixon, Illinois. (Third Am. Compl. ¶¶ 36, 39, 42, 64, 80, 133; *see also* Trust Indenture, Ex. A to Fleischer Decl.; Continuing Disclosure Agreement, Ex. D to Fleischer Decl.) Moreover, according to the "Governing Law and Venue" section of the Continuing Disclosure Agreement allegedly breached by BOKF, Illinois law controls. (Continuing Disclosure Agreement § 18; *see also* Trust Indenture § 12.06 (providing the same).)

The clear implication of these surrounding facts is that New Jersey was not the focus of the agreements that led BOKF to transmit a one-time payment to the non-party underwriter who is,

incidentally, a New Jersey resident. *Cf. Spinello Cos. v. Infrastructure Techs., Inc.*, 10-4492, 2011 WL 1792553, at *4 (D.N.J. May 10, 2011) (finding that the defendant's contact with a New Jersey party was "merely incidental" to its work on a public works project in Minnesota.). The Court, therefore, does not find that BOKF's one-time payment to a non-party demonstrates that Defendant purposefully directed its activities to New Jersey.

Plaintiffs also maintain that the Court has personal jurisdiction over BOKF because BOKF purposefully directed communications to Plaintiffs in New Jersey. BOKF acknowledges that it has "issued" notices to beneficial bondholders. (Varzaly Aff.¶ 8.) These notices, however, are issued through "the Electronic Municipal Market Access System ("EMMA"), a central noticing system" governed by entities located in Virginia, or "the Depository Trust Company ("DTC"), a central noticing service located in Delaware." (*Id.*) BOKF argues that it "did not make direct contact with New Jersey through its bondholder notices." (*Id.*)

In response to this argument, Plaintiffs allege that BOKF knowingly directed notices to bondholders in New Jersey through EMMA. According to Plaintiffs, "BOKF maintained the registration records for the bonds including the names addresses of the [Individual] Bondholders." (Pls.' BOKF Opp'n Br. 22 (citing Trust Indenture §§ 1.02, 2.09).)[7] Plaintiffs contend that even if the EMMA system broadly disseminated notices to the general public, BOKF "knowingly issued notices directed to [the Individual] Bondholders in New Jersey through EMMA" because it intended its notices to be read by Plaintiffs it knew to be in New Jersey. (*Id.* at 22.) Furthermore, Plaintiffs allege that BOKF's EMMA notices made various solicitations to Plaintiffs in New Jersey, including that they form a bondholder committee, contact BOKF with questions about the

---

[7] Defendant BOKF denies that the Indenture required it to maintain such records, or that the Company, in fact, maintained such records. (BOKF Reply Br. 3 n.1.)

notices, submit certificates of beneficial ownership or demands for indemnification, and additional solicitations for Plaintiffs to participate in four separate conference calls hosted by BOKF. (*Id.* (citing BOKF Notices, Ex. J to Wedinger Decl., ECF No. 89-11).) Finally, Plaintiffs contend that BOKF failed to provide certain notices to individual bondholders. (*Id.* at 22–23.) According to Plaintiffs, these failures to make required communications with New Jersey Plaintiffs are a basis for the Court's personal jurisdiction over BOKF.

The Third Circuit has held that "the mere posting of information or advertisements on an internet website does not confer nationwide personal jurisdiction." *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 726 (3d Cir. 2009). To hold otherwise "would not comport with 'fair play and substantial justice.'" *Id.* (citing *Burger* King, 471 U.S. 462)). BOKF's posting of information to EMMA—a free, publicly accessible website—would not, without more, provide this Court with personal jurisdiction.

Plaintiffs' allegation that BOKF knew its EMMA notice would likely be read by New Jersey residents is also not a basis for personal jurisdiction over the Company. In order to assert personal jurisdiction over BOKF, due process requires the Court to have "evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site *to the state*, knowingly *interacting* with residents of the forum state via its website, or through sufficient other related contacts." *Toys R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) (emphasis added). Here, Plaintiffs have not demonstrated that BOKF "directly targeted" its internet notices on EMMA to New Jersey. Rather, by posting messages to EMMA, a free, publicly accessible website,[8] BOKF directed its messages to no state in particular.

---

[8] EMMA, Overview, *available at* https://emma.msrb.org/AboutEmma/Overview (*last accessed* September 21, 2020

*Cf. Weber v. Jolly Hotels*, 977 F. Supp. 327, 334 (D.N.J. 1997) ("[A]dvertising on the Internet is not tantamount to directing activity at or to purposefully availing oneself of a particular forum."). Nor have Plaintiffs demonstrated that BOKF "knowingly interacted" with residents of New Jersey through EMMA. *Compare with O'Connor*, 496 F.3d at 318 (finding lack of personal jurisdiction where a resort "mailed [the plaintiffs] a brochure and traded phone calls with them for the purpose of forming an agreement to render spa services"). Plaintiffs have not alleged that BOKF interacted with Plaintiffs in New Jersey. Rather, the Third Amended Complaint merely alleges general solicitations directed at all bondholders throughout the country. There is little indication in the Third Amended Complaint that New Jersey residents responded and subsequently interacted with BOKF as a result of the EMMA notices. (*See, e.g.*, Third Am. Compl. ¶ 210 ("The trustee filed yet another status report posted on EMMA requesting indemnity from Bondholders, including the Plaintiffs and the [c]onsenting [b]ondholders, consent from the [b]ondholders, including the Plaintiffs and the [c]onsenting [b]ondholders, and scheduling a [b]ondholder informational conference call.").) The Court, accordingly, finds that BOKF's EMMA notices were not purposefully directed at residents of New Jersey. Therefore, the Court finds that it lacks personal jurisdiction over BOKF.

### 2.    Request to Transfer Case Pursuant to 28 U.S.C. § 1406

Plaintiffs request that, "in the event this Court determines BOKF is not subject to personal jurisdiction, in the interest of justice, this case should be transferred to Illinois" under 28 U.S.C. § 1406. (Pls.' BOKF Opp'n Br. 26.) BOKF objects to transfer, arguing that "Plaintiffs have not established that the numerous defendants in this case, let alone BOKF, can be properly haled into Illinois court, nor have Plaintiffs demonstrated what Illinois district would be an appropriate

venue." (BOKF's Reply Br. 5, ECF No. 91.)  BOKF also argues that "Plaintiffs have identified no injustice that would result by dismissal." (*Id.*)

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  A district court may transfer a case even where the court finds it lacks personal jurisdiction over a defendant. *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 541 (D. Md. 2014) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, . . . whether the court in which it was filed had personal jurisdiction over the defendants or not." (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962))).  When deciding a transfer motion, courts may consider whether the statute of limitations for a cause of action permits the plaintiff to refile in an alternative forum. *Goldlawr, Inc.*, 369 at 466. "The burden of establishing that an action should be transferred is on the party seeking it." *Metropolitan Grp. Prop. & Cas. Ins. Co. v. Electrolux Home Prods., Inc.*, No. 17-11865, 2018 WL 2422023, at *3 (D.N.J. May 29, 2018).

Here, the Court denies Plaintiffs' non-specific request to transfer this case "to Illinois."  As BOKF persuasively argues, Plaintiffs have failed to specify which federal district court in Illinois would be an appropriate transfer venue.  There are three United States federal district courts within Illinois: the northern, central, and southern district courts.[9]  Although the Third Amended Complaint suggests that there may be some defendants and witnesses who are at home in Illinois, (*see, e.g.*, ¶¶ 36, 39, 42, 50), Plaintiffs have not demonstrated to the Court that justice requires transfer to one of these districts over another. *Cf. Metropolitan*, 2018 WL 2422023, at *3

---

[9] United States Court of Appeals for the Seventh Circuit, Practitioner Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit at p. 15 (2019 ed.), *available at* http://www.ca7.uscourts.gov/forms/Handbook.pdf (last accessed September 25, 2020).

(dismissing under 28 U.S.C. § 1406 where "[p]laintiff has not requested that the Court transfer the matter to any specific district."). Nor have Plaintiffs informed the Court which federal district court within Illinois is generally appropriate for an action involving a community college in Dixon, Illinois. (*See generally* Third Am. Compl. ¶¶ 39, 42.) Plaintiffs have also failed to provide the Court with an adequate basis for finding that the several non-Illinois-based defendants and witnesses in this action can be fairly haled into Illinois federal court. Furthermore, Plaintiffs' Brief does not identify statute of limitations issues that preclude them from refiling their claims in an alternate forum. (BOKF Opp'n Br. 26–27.) These failures leave the Court without the information it needs to conclude transfer would be "in the interest of justice."

Moreover, where Plaintiffs fail to establish personal jurisdiction over a defendant and also fail to meet their burden of demonstrating that transfer is in the interest of justice, Section 1406 requires district courts to dismiss the action. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district *shall* dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (emphasis added)). Accordingly, the Court dismisses the action against BOKF.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions are granted.  The Third Amended Complaint is dismissed with prejudice as to Plaintiffs' Section 10(b) of the 1934 Securities and Exchange Act and SEC Rule 10b–5 claims against BMOC.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims against BMOC.  The Third Amended Complaint is dismissed as to BOKF for lack of personal jurisdiction.  The Court will enter an Order consistent with this Memorandum Opinion.


_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE